UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
GIDON ABRAMOV,

                                   Petitioner,

-against-

UNITED STATES OF AMERICA,

                                   Respondent.
-----------------------------------------------------------------x

**MEMORANDUM & ORDER**

10-CV-3615 (SLT)

**TOWNES, United States District Judge:**

Gidon Abramov, represented by counsel, moves for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 on the grounds that (1) his waiver of appeal does not bar an ineffective assistance of counsel claim; and (2) he was denied effective assistance because his attorneys failed to investigate and present evidence concerning his mental health, or to consider his competence to sign the waiver of appeal. For the reasons set forth below, the petition is denied.

I.    BACKGROUND

    A.    Facts

        1.    Plea Agreement and Conference

Pursuant to a written agreement dated December 7, 2005, Abramov pleaded guilty to one count of racketeering (including three acts of robbery and one act of attempted robbery), in violation of 18 U.S.C. § 1962(c), and one count of conspiracy to transport stolen goods in foreign commerce, in violation of 18 U.S.C. § 371. (Pet. Ex. D ("Plea") at D1). The plea agreement calculated and Abramov stipulated to an anticipated Guidelines range of 300 months based on Abramov's projected offence level, Criminal History Category, and the statutory maximum term of twenty-five years. (Plea at D6). The plea agreement also contained an appeal-waiver

provision, under which Abramov agreed "not to file an appeal or otherwise challenge the conviction in the event that the Court imposes a term of imprisonment of 300 months or below." (Plea at D6).

At a plea conference held the same day, Abramov represented to the Court under oath that he had been under the care of psychiatrist while in custody the prior five months and that he was taking medication. The Court asked the following questions:

| | |
|---|---|
| THE COURT: | Does that medication [a]ffect your ability to understand what is going on here this morning? |
| ABRAMOV: | No. |
| THE COURT: | Is your mind clear? |
| ABRAMOV: | Yes. |

(Plea.Tr.[1] at 7). The Court continued by advising Abramov of his constitutional right to proceed to trial and Abramov acknowledged that he understood this and other related rights. (Plea.Tr. at 8-9). Additionally, the Court specifically discussed the waiver contained in the plea agreement:

| | |
|---|---|
| THE COURT: | Now, with regard to that waiver of appeal I just want to go over that, because I want to make sure that you understand it. On page six of the plea agreement you have agreed not to file an appeal or otherwise challenge your conviction in the event that the Court imposes a term of imprisonment of 300 months or below. Do you understand that? |
| ABRAMOV: | Yes, Ma'am. |
| THE COURT: | Do you agree[] to that? |
| ABRAMOV: | Yes. |

---

[1] "Plea.Tr." refers to the December 7, 2005, plea conference transcript. "OA.Tr." refers to the July 20, 2007, oral argument transcript. "F.Tr." refers to the December 10, 2007, Fatico hearing transript. "S1.Tr." refers to the January 31, 2008, sentencing conference transcript. "S2.Tr." refers to the March 5, 2008, sentencing conference transcript.

(Plea.Tr. at 10-11). Just before reviewing in detail the counts to which Abramov would plead guilty, the Court also inquired:

> THE COURT: Are you satisfied with your legal representation up to this point, Mr. Abramov?
>
> ABRAMOV: Yes.

(Plea.Tr. at 16). Based upon the information Abaramov provided at the hearing, the Court found that he was acting voluntarily, that he fully understood his rights and the consequences of his plea, and that there was a factual basis for the plea. (Plea.Tr. at 25). Abaramov indicated through his attorney that he intended to file a departure motion regarding his sentence. (Plea.Tr. 25-26).

### 2. Oral Argument Regarding PSR Objections

On July 20, 2007, the Court held oral argument on defense objections to the presentence report ("PSR") and the applicable sentencing enhancements. Defense counsel orally withdrew a number of objections and explained that Abramov wished to focus on two issues: "his acceptance of responsibility which he should get credit for it; and, secondarily, the extraordinary cooperation" he provided. (OA.Tr. at 8). Recognizing that Abramov had stipulated to the sentencing guidelines calculation in his plea agreement, defense counsel conceded that it was proper for the Court to consider acceptance of responsibility in the context of a sentencing memorandum rather than in objections to the PSR. (OA.Tr. at 24).

With regard to Abramov's cooperation, the government responded that "[f]rom the beginning we have not contested [Abramov] has provided some assistance. We lay out in our letters what he did. I think to the extent they want to prove that happened, they don't have to. We don't contest it." (OA.Tr. at 33). After conferring with Abramov, defense counsel stated they would provide evidence at the next hearing in support of Abramov's claim that "at one of

3

the proffer sessions there was a promise made" to provide a cooperation agreement. (OA.Tr. at 34).

### 3. <u>Fatico</u> hearing

On December 10, 2007, the Court held a <u>Fatico</u> hearing[2] to discuss Abramov's claim that the government improperly refused to submit a letter pursuant § 5K1.1 of the federal Sentencing Guidelines ("5K1 letter") regarding his cooperation. (F.Tr. at 5). The defense called Michael Padden, Esq., the assistant federal defender originally assigned to represent Abramov, who attended the four proffer sessions at issue. (F.Tr. at 8, 11). Padden testified that at the second proffer session the government commended that Abramov "had already done a lot towards a 5K1 letter." (F.Tr. 21). At the third proffer session, however, Padden testified that the government made clear it "was having a problem with [Abramov's] credibility." (F.Tr. at 22). At the fourth proffer session, Padden attempted to address the government's concerns, but "the main issues at that point were regarding Mr. Abramov's brother's alleged involvement in specifically the crime at the jewelry store" and "some concern about whether or not Mr. Abramov had been completely truthful with regard to the disposition of the proceeds of that robbery." (F.Tr. at 23). On cross-examination, Padden admitted that the terms of the proffer agreement explicitly stated in bold lettering: "This is not a cooperation agreement." (F.Tr. at 27). He reiterated that the only comment the government made on the issue was that Abramov "was on his way to a 5K[1] letter at the second proffer session." (F.Tr. at 28). At the conclusion of Padden's testimony, the government entered into evidence a series of forms "which summarize [Abramov's] specific statements . . . so the extent of this defendant's cooperation is now fully known to everyone, We don't contest that he didn't do any of that, he did it all." (F.Tr. at 43).

---

[2]  "The purpose of a <u>Fatico</u> hearing is to develop evidence relevant to sentencing." <u>Bedoya-Cano v. United States</u>, No. 07 Civ. 9276, 2008 WL 4200167, at *3 n.3 (S.D.N.Y. May 29, 2008), <u>adopted by</u>, 2008 WL 4298498 (S.D.N.Y. Sept. 11, 2008).

4

Defense counsel then raised the issue of Abramov's mental health. Counsel indicated that the probation officer was in possession of Abramov's psychiatric file from the Metropolitan Detention Center ("MDC"), including the February 23, 2006, evaluation by a psychiatrist who is "very thorough and fair." (F.Tr. at 51, 54). The Court granted the defense permission to introduce the medical file into the record without objection – though the government noted that the results of the evaluation were already summarized in an addendum to the PSR. (F.Tr. at 51-52). After stating that Abramov had "exhibited abnormal behavior" and "would make paranoid statements to me," defense counsel asked "the Court [to] consider having a further evaluation of this defendant in light of all the psychiatric overtones." (F.Tr. 53, 54). The government argued that there was no showing that such an updated evaluation was necessary and that, according to the PSR, doctors who evaluated Abramov in a prior state case "found him to be malingering in the course of his sentencing." (F.Tr. at 55). The Court directed the probation officer to obtain any additional records of Abramov's treatment at the MDC and "file an addendum to update on his health status." (F.Tr. at 56). The Court explained that it would consider the updated reports because defense counsel had not yet provided a basis for ordering another psychiatric test. (F.Tr. at 60).

### 4. First Sentencing Conference

On January 31, 2008, the Court held a sentencing conference. Defense counsel opened with an immediate application that the Court order an additional mental health examination before sentencing. Noting that Abaramov's medication had been substantially increased and there was a new diagnosis of paranoid schizophrenia, defense counsel argued that the Court needed "an expert to come in and say what we are going to do with this person." (S1.Tr. at 6).

5

> DEFENSE COUNSEL: But I think Your Honor is missing something here. Okay? And that's this: This man is chronically mentally ill with paranoid schizophrenia . . . . Originally, he had been requesting a mental examination, which I was against, until yesterday when I got this and saw they want to increase his medication three times.

(S1.Tr. at 4, 5). The Court heard extensively from both sides on the issue and even took a brief recess to review a provision cited by defense counsel. (S1.Tr. at 11-12). When the proceedings resumed, the Court observed that Abramov had been "[v]ery lucid" in his frequent letter communications, demonstrating "he has no problem understanding his circumstances or the predicament." (S1.Tr. at 12). Indeed, Abramov had the wherewithal to insist to his attorneys that his criminal history category should be 4 rather than 5. (S1.Tr. at 16). Denying defense counsel's request for further examination, the Court commented that "it appears to me that Mr. Abramov has a pattern of when it's time to be sentenced, he has mental problems. And back in 1991, when he was charge[d] in the State Court, he had mental health examinations for competency" in which doctors "found that he was malingering." (S1.Tr. at 12).

The Court made two additional rulings at the conference. First, the Court declined to grant a sentence reduction for acceptance of responsibility, finding that "Abramov obstructed justice when he, with his brother on two occasions, tried to secrete and retain proceeds of [his] criminal acts." (S1.Tr. at 19). Second, the Court found that there had been no agreement or promise by the government to file a 5K1 letter and that although Abramov "did provide assistance to the Government upon which it relied . . . the offense activities here are so heinous and brutal that the credit I would give to lower the guidelines range is not enough to [bring his] sentence below the statutory maximum." (S1.Tr. at 20-21). The Court emphasized that it had "carefully considered each and every submission" by the parties in reaching these decisions.

(S.Tr. at 21). In closing, the Court directed that the PSR be revised to strike agreed-upon paragraphs for purposes of clarity and in anticipation of sentence finally being imposed. (S1.Tr. at 28).

### 5. Second Sentencing Conference

On March 5, 2008, the Court held a final sentencing conference during which Abramov spoke at length, accounting for approximately 60 pages in the transcript. He initially argued that he needed more time to review and understand the updated PSR because he wanted to make objections to it and "English is my second language." (S2.Tr. at 42). As the government explained, however, Abramov had been in possession of the original PSR for two years and the only changes were deletions. (S2.Tr. at 43). As to his substantive objections, Abramov stated: "I don't dispute the crimes, your Honor. The only thing I'm disputing is these enhancements for leadership, loss amount, obstruction of justice." (S2.Tr. at 68). The Court reminded Abramov that it had already ruled on the loss amount and obstruction of justice enhancements. (S2.Tr. at 68).

As to the leadership issue, FBI Agent Jeff Koch testified at the conference that "several cooperators who were Mr. Abramov's codefendants . . . have told me that Mr. Abramov was directly responsible for selecting the victims, selecting the times that the victims were going to be robbed, selecting how they were going to be robbed, preparing the plan on how these victims were going to be robbed, as far as assigning roles," that the stolen jewelry would go into his custody and he had the connection to a fence. (S2.Tr. at 70-71). The Court ruled that based upon Agent Koch's testimony and the plea agreement stipulations, Abramov was a leader. (S2.Tr. at 75).

7

Abramov spent the remainder of the conference arguing that he did not understand what he was doing at the time of the plea because he was not properly medicated and that his lawyer had "misled" him about the applicable enhancements. (S2.Tr. at 78-79). The Court allowed Abramov to be heard at length on this issue:

| | |
|---|---|
| ABRAMOV: | The only time I started understanding what enhancements really are is when they switched my medication. (S2.Tr. at 79). |
| | . . . |
| ABRAMOV: | I did not understand [the appeal-waiver], your Honor, as well as I'm understanding it now. I woke up from the amnesia, your Honor. (S2.Tr. at 79). |
| | . . . |
| ABRAMOV: | I was not in my right state of mind at the time of taking the plea. (S2.Tr. at 80). |
| | . . . |
| ABRAMOV: | That's the only thing I'm jumping up for even though I stipulated under 6B1.4 and I'm . . . telling . . . the Court they are not correct. Now my mind is not as cloudy as it was during the time of the . . . plea stipulation. I realize it was a mistake. (S2.Tr. at 87). |
| | . . . |
| ABRAMOV: | The doctors have diagnosed me with certain mental illnesses. Maybe, if . . . you just take this into consideration, could it be my mental health or my mental status regardless of medication or drugs affected my cooperation? Which is exactly what happened. Because of my mental problems or detoxification, it directly affected the cooperation. (S2.Tr. at 96). |
| | . . . |
| ABRAMOV: | One more time I would like to remind the Court that during my plea allocution I did not understand what I was doing. (S2.Tr. at 100). |

The Court also allowed Abramov to list all the ways in which he believed his cooperation helped the government, (S2.Tr. at 88-95), and explained that the Court would accept all of his assertions as true for purposes of sentencing, (S2.Tr. at 88, 90). Ultimately, the Court sentenced Abramov to twenty years on the racketeering count and sixty months on the conspiracy count, 300 months total, to run consecutively. (S2.Tr. at 107). The Court noted that pursuant to the plea agreement

8

Abramov had waived his right to appeal if sentenced to 300 months' imprisonment or less. (S2.Tr. at 109). Judgment was entered on March 12, 2008.

### 6. Post-Sentencing Proceedings

On March 14, 2008, Abramov filed a notice of appeal. (04-CR-1041, Docket No. 401). On October 15, 2008, Abramov's appellate counsel moved, pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), to withdraw from representation on the ground that he was unable to identify any legitimate issues for appeal. Appellate counsel argued that Abramov's plea and appeal-waiver were knowing, voluntary, and competent, that it was against Abramov's interests to contest the plea, and that none of his unwaivable statutory or constitutional rights was implicated. On June 19, 2009, the Court of Appeals for the Second Circuit granted the motion to withdraw, as well as the government's motion for a summary affirmance. (04-CR-1041, Docket No. 453).

### B. Habeas Petition

On August 6, 2010, Abramov filed the instant motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. In his petition, Abramov argues that (1) (a) the appeal waiver in the plea agreement should be strictly construed to cover the conviction, not the sentence; and (b) even if the waiver covers the sentence, it should not apply where the challenge is based upon ineffective assistance of counsel; and (2) he was denied effective assistance when his attorneys failed (a) to investigate and present evidence concerning his mental health; and (b) to determine whether he was competent to waive his right to object to sentencing enhancements.

## II. DISCUSSION

### A. Waver of Appeal

Parsing the terms of his plea agreement, Abramov first argues that his waiver of his right to challenge his <u>conviction</u> was not a waiver of his right to challenge his <u>sentence</u>. (Pet. Mem. at 1-3). Abramov has offered some case law in support of such a reading, but no case directly on point. In response, the government does not address this specific contention, instead relying on the general proposition that an appeal-waiver is enforceable if entered into knowingly – citing cases in which the appeal-waiver explicitly included the word "sentence." (Gov't Resp. at 2). Abramov also argues that even if his waiver bars a sentence challenge, it should not apply when the challenge is based on ineffective assistance of counsel. (Pet. Mem. at 3). Again, the government correctly notes that a waiver typically is enforceable where ineffective assistance claims "concern the sentencing phase of the proceeding, as opposed to the plea phase," (Gov't Resp. at 2), but relies on cases where the appeal-waivers contained the word "sentence." In any event, the Court need not wade into this textual thicket, as Abramov's petition fails on the merits.

### B. Ineffective Assistance

To prevail on an ineffective assistance of counsel claim, a petitioner must show that his counsel's "performance was deficient" and "the deficient performance prejudiced the defense." <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). With regard to the first prong, a petitioner's burden is a heavy one, as a court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Raysor v. United States</u>, 647 F.3d 491, 495 (2d Cir. 2011) (quoting <u>Strickland</u>, 466 U.S. at 689). With regard to prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.

Abramov argues that his trial attorneys "could properly have . . . presented to the district judge. . . evidence concerning [his] childhood abuse, his early and ongoing substance abuse, his mental condition, and the relationship of those factors to the criminal conduct . . . to justify either a downward departure or a non-Guidelines sentence." (Pet. Mem. at 10). He contends that defense counsel "completely fail[ed] to investigate their client's background" and that their references to his mental health condition from the available records "were, to say the least, unenthusiastic and incomplete." (Pet. Mem. at 12). Additionally, Abramov claims that his counsel failed to determine whether he was competent to sign the waiver or whether the waiver was advantageous to him. (Pet. Mem. at 14-15). These assertions are wholly without merit.

Transcripts from the numerous and lengthy conferences in this case demonstrate that the Court had ample access to Abramov's mental health history and considered it with regard to his plea and sentencing. Indeed, in response to defense counsel's arguments, the Court ordered that Abramov's file be admitted into evidence and requested all updated mental health records from the MDC. (F.Tr. at 51-52, 56). Abramov's own extensive oral and written arguments were also available to and considered by the Court. Moreover, contrary to Abramov's assessment, defense counsel repeatedly and emphatically requested that the Court order further examinations and take mental health into account for sentencing purposes. (F.Tr. 51-60; S1.Tr. 4-6). On the issue of Abramov's competency to sign the plea agreement and appeal-waiver, the record shows that the Court carefully inquired as to Abramov's understanding and acquiescence. (Plea.Tr. at 6-25). Finally, even if defense counsel failed to explain properly the decision to withdraw certain objections to the PSR, such conduct did not cause Abramov prejudice. In an abundance of caution, the Court not only required the government to offer proof in support of enhancements for obstruction of justice, leadership role, and loss amount, but allowed Abramov extensive time

to detail his objections to the PSR and all examples of cooperation on the record. (S2.Tr. at 44-71). As Abramov has failed to show that his attorneys were deficient or that he suffered prejudice, his petition is denied.

### III.  CONCLUSION

For the reasons set forth above, Petitioner's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255 is DENIED. The Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253 because the petitioner has failed to make a substantial showing of the denial of a constitutional right. The Clerk of the Court is directed to enter judgment denying the petition and closing this case.

**SO ORDERED.**

                                        s/ SLT

                                        SANDRA L. TOWNES
                                        United States District Judge

Dated: January 14, 2013
       Brooklyn, New York